## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

COUNTY OF WASHINGTON, PENNSYLVANIA, on its own behalf and on behalf of all similarly situated Pennsylvania Counties,

                     Plaintiff,

v.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, MERSCORP HOLDINGS, INC., BANK OF AMERICA, N.A., THE BANK OF NEW YORK MELLON, THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., CITIBANK, N.A., CITIMORTGAGE, INC., DEUTSCHE BANK NATIONAL TRUST COMPANY, DEUTSCHE BANK TRUST COMPANY AMERICAS, HSBC BANK USA, N.A., HSBC FINANCE CORPORATION f/k/a HOUSEHOLD INTERNATIONAL, INC., JPMORGAN CHASE BANK, N.A., WELLS FARGO BANK, N.A., WEST PENN FINANCIAL SERVICE CENTER INC., and JOHN DOE DEFENDANTS, 1-100.

                     Defendants.

CIVIL ACTION NO. 2:16-cv-672

JUDGE JOY FLOWERS CONTI

JURY TRIAL DEMANDED

**AMENDED CLASS ACTION COMPLAINT**

## AMENDED CLASS ACTION COMPLAINT

Plaintiff, the County of Washington, Pennsylvania, on behalf of itself and all other similarly situated Pennsylvania Counties ("Plaintiff"), submits this Amended Class Action Complaint (the "Complaint") against Defendants, Mortgage Electronic Registration Systems, Inc., MERSCORP Holdings, Inc., Bank of America, N.A., The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., Citibank N.A., CitiMortgage, Inc., Deutsche Bank National Trust Company, Deutsche Bank Trust Company Americas, HSBC Bank USA, N.A., HSBC Finance

Corporation, f/k/a Household International, Inc., JPMorgan Chase Bank, N.A., Wells Fargo Bank, N.A., West Penn Financial Service Center Inc. and John Doe Defendants 1 through 100. The allegations are asserted on information and belief after due investigation, except as to those matters that relate to Plaintiff and its own acts, which are asserted on personal knowledge.

## I.      NATURE OF THE ACTION

1.     The County of Washington, Pennsylvania, brings this action on its own behalf and on behalf of a class of all other similarly situated Pennsylvania counties (collectively, the "Class") against Mortgage Electronic Registration Systems, Inc. ("MERS"), MERSCORP Holdings, Inc. ("MERSCORP"), Bank of America, N.A., The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., Citibank N.A., CitiMortgage, Inc., Deutsche Bank National Trust Company, Deutsche Bank Trust Company Americas, HSBC Bank USA, N.A., HSBC Finance Corporation, f/k/a Household International, Inc., JPMorgan Chase Bank, N.A., Wells Fargo Bank, N.A., West Penn Financial Service Center Inc. and John Doe Defendants 1 through 100 (the "Bank Defendants") to remedy Defendants' failures to properly and timely record mortgage assignments as required by Pennsylvania law.[1]

2.     The Defendants' failures to properly and timely record mortgage assignments have rendered Pennsylvania's public land records incomplete, making it more difficult for county governments, title searchers, homeowners and the general public to accurately track who owns title to real estate. In addition, the Defendants' failures to properly and timely record mortgage assignments have cost the Commonwealth of Pennsylvania and each of its counties millions of dollars in lost recording fees, decreasing the amount of revenue available for vital public services.

---

[1]  MERS and MERSCORP are hereinafter referred to as the "MERS Defendants" and the remaining Defendants are hereinafter referred to as the "Bank Defendants."

3.      The Bank Defendants have been active participants in the mortgage-backed securities ("MBS") industry, including by serving as trustees for numerous MBS trusts into which securitized mortgage loans are ultimately conveyed. In a securitization, a mortgage loan typically is transferred multiple times before it is conveyed to the trustee on behalf of the MBS trust. Each of the Defendants has engaged in transfers of mortgage loans secured by real property located in Washington County and throughout Pennsylvania.

4.      Each of the Bank Defendants is also a member of, and participates in, the "MERS System," the MERS Defendants' privately owned, non-public, members-only electronic registry for recording and tracking transfers of ownership of mortgages without recording associated mortgage assignments in public land records offices.

5.      Each of the Defendants has systematically failed to create and timely record mortgage assignments in connection with transfers of promissory notes secured by mortgages on Pennsylvania real estate, both when operating within the MERS System and otherwise. These failures to record mortgage assignments have damaged the integrity of Pennsylvania's public land records by creating gaps in the chain of title and creating confusion amongst property owners and others about the identity of the owners of their mortgages, and have wrongfully deprived Washington County and all of the other Pennsylvania counties of millions of dollars in recording fees, in violation of 21 P.S. §§ 351, 444 and 623-1 (together, the "Pennsylvania Recording Statutes"). Plaintiff seeks an award of damages for these violations, to quiet title on all of the adversely affected Pennsylvania properties by requiring Defendants to record the missing mortgage assignments and pay the related recording fees, restitution for Defendants' unjust enrichment, and for declaratory and permanent injunctive relief.

## II.     JURISDICTION AND VENUE

6.      Plaintiff contests this Court's subject matter jurisdiction. Defendants removed this lawsuit from the Court of Common Pleas for Washington County, Pennsylvania, where Plaintiff initially filed it. The Court lacks subject matter jurisdiction because Plaintiff asserts only state law claims, complete diversity of citizenship does not exist, the amount in controversy is not alleged to be greater than $75,000, and the proposed Class has less than 100 members. Upon remand, the Court of Common Pleas for Washington County will have jurisdiction over this action pursuant to 42 Pa. C.S.A. § 931.

7.      Because the Court lacks subject matter jurisdiction, venue in this District is improper. Venue lies in the Court of Common Pleas for Washington County pursuant to Pa. R. Civ. P. 1006 and 2179. Many of the mortgages and unrecorded mortgage assignments at issue relate to real property within Washington County, each of the Defendants regularly conducts business in Washington County, and transactions or occurrences giving rise to Plaintiff's claims occurred within Washington County.

## II.     PARTIES

8.      The Plaintiff is the County of Washington, Pennsylvania ("Washington County"), a county of the Fourth Class.

9.      Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), a wholly-owned subsidiary of Defendant MERSCORP, is a Delaware corporation and maintains its principal place of business at 1818 Library Street, Suite 300, Reston, VA 20190.

10.     Defendant MERSCORP Holdings, Inc. ("MERSCORP") is a Delaware corporation that maintains its principal place of business at 1818 Library Street, Suite 300, Reston, VA 20190. MERSCORP was formerly known as MERSCORP, Inc.

11.    Defendant Bank of America, N.A. ("BOA") is a national banking association with its principal place of business at 100 North Tryon Street, Charlotte, NC 28202. BOA directly, and indirectly through its agents, employees, subsidiaries, predecessor companies, and/or related companies, engaged in transfers of promissory notes secured by real property located in Washington County and throughout Pennsylvania without properly or timely recording mortgage assignments. BOA is a MERS member and a shareholder of MERSCORP. Lawrence P. Washington, Managing Director and Legacy Assets and Servicing Executive for BOA, has been a Director of MERSCORP since 2011.

12.    Defendant The Bank of New York Mellon ("BNY Mellon") is a New York state chartered bank with its principal place of business at 1 Wall Street, New York, NY 10005. BNY Mellon directly, and indirectly through its agents, employees, subsidiaries, predecessor companies, and/or related companies, engaged in transfers of promissory notes secured by real property located in Washington County and throughout Pennsylvania without properly or timely recording mortgage assignments. BNY Mellon is a MERS member.

13.    Defendant The Bank of New York Mellon Trust Company, N.A. ("BNY Mellon Trust"), is a national banking association with its main office, as set forth in its articles of association, at 400 South Hope Street, Los Angeles, CA 90071. BNY Mellon Trust directly and indirectly, through its agents, employees, subsidiaries, predecessor companies, and/or related companies, engaged in transfers of promissory notes secured by real property located in Washington County and throughout Pennsylvania without properly or timely recording mortgage assignments. BNY Mellon Trust is a MERS member.

14.    Defendant Citibank, N.A. ("Citibank") is a national banking association with its main office, as set forth in its articles of association, at 701 East 60th Street North, Sioux Falls, SD 57104.

Citibank, directly and indirectly, through its agents, employees, subsidiaries, predecessor companies, and/or related companies, engaged in transfers of promissory notes secured by real property located in Washington County and throughout Pennsylvania without properly or timely recording mortgage assignments. Citibank is a MERS member.

15.     Defendants CitiMortgage, Inc. ("CitiMortgage") is a New York corporation with its principal place of business at 1000 Technology Drive, O'Fallon, MO 63368. CitiMortgage directly and indirectly, through its agents, employees, subsidiaries, predecessor companies, and/or related companies, engaged in transfers of promissory notes secured by real property located in Washington County and throughout Pennsylvania without properly or timely recording mortgage assignments. CitiMortgage, Inc., is a shareholder of MERSCORP. CitiMortgage, Inc. is a MERS Member and a shareholder of MERSCORP. Brian McCrackin, Director of Finance for CitiMortgage, has been a Director of MERSCORP since 2011.

16.     Defendant Deutsche Bank National Trust Company ("DBNTC") is a national banking association with its main office at 2000 Avenue of the Stars, Suite 910-N, Los Angeles, California 90067. DBNTC directly and indirectly, through its agents, employees, subsidiaries, predecessor companies and/or related companies, engaged in transfers of promissory notes secured by real property located in Washington County and throughout Pennsylvania without properly or timely recording mortgage assignments. DBNTC is a MERS member.

17.     Defendant Deutsche Bank Trust Company Americas ("DBTC Americas") is a New York banking corporation with its principal place of business at 60 Wall Street, New York, NY 10005. DBTC Americas directly and indirectly, through its agents, employees, subsidiaries, predecessor companies and/or related companies, engaged in transfers of promissory notes secured

by real property located in Washington County and throughout Pennsylvania without properly or timely recording mortgage assignments. DBTC Americas is a MERS member.

18.     Defendant HSBC Bank USA, N.A. ("HSBC") is a national banking association with its main office, as set forth in its articles of association, at 1800 Tysons Blvd., McLean, VA 22102. HSBC directly and indirectly, through its agents, employees, subsidiaries, predecessor companies and/or related companies, engaged in transfers of promissory notes secured by real property located in Washington County and throughout Pennsylvania without properly or timely recording mortgage assignments. HSBC is a MERS member.

19.     Defendant HSBC Finance Corporation, f/k/a Household International, Inc., ("HSBC Finance") is a Delaware corporation with its principal place of business at 26525 North Riverwoods Boulevard, Suite 100, Mettawa, IL 60045. HSBC Finance directly and indirectly, through its agents, employees, subsidiaries, predecessor companies and/or related companies, engaged in transfers of promissory notes secured by real property located in Washington County and throughout Pennsylvania without properly or timely recording mortgage assignments. HSBC Finance is a MERS member and a shareholder of MERSCORP.

20.     Defendant JPMorgan Chase Bank, N.A. ("JPM Chase") is a national banking association with its main office, as set forth in its articles of association, at 1111 Polaris Parkway, Columbus, OH 43240. JPM Chase directly and indirectly, through its agents, employees, subsidiaries, predecessor companies and/or related companies, engaged in transfers of promissory notes secured by real property located in Washington County and throughout Pennsylvania without properly or timely recording mortgage assignments. JPM Chase is a MERS member and David Beck, the Chief Financial Officer of Chase Legacy Services, has been a Director of MERSCORP since 2014.

21.     Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a national banking association with its main office, as set forth in its articles of association, at 101 N. Phillips Avenue, Sioux Falls, SD 57104. Wells Fargo directly and indirectly, through its agents, employees, subsidiaries, predecessor companies and/or related companies, engaged in transfers of promissory notes secured by real property located in Washington County and throughout Pennsylvania without properly or timely recording mortgage assignments. Wells Fargo is a MERS member and a shareholder of MERSCORP. Kathy Gray, Executive Vice President for Wells Fargo, has been a Director of MERSCORP since 2012.

22.     Defendant West Penn Financial Service Center Inc. ("West Penn") is a Pennsylvania corporation with its main office at 800 Smallman St., Pittsburgh, PA 15222. West Penn directly and indirectly, through its agents, employees, subsidiaries, predecessor companies and/or related companies, engaged in transfers of promissory notes secured by real property located in Washington County and elsewhere in Pennsylvania without properly or timely recording mortgage assignments. West Penn is a MERS member.

23.     John Doe Defendants 1 through 100 are parties who Plaintiff believes will be identified through discovery. Plaintiff, upon information and belief, expects that certain of the John Doe Defendants 1 through 100 are Pennsylvania citizens, however the true names and capacities of John Doe Defendants 1 through 100 are currently unknown to Plaintiff.

24.     Defendants have at all times relevant to this litigation conducted business in the Commonwealth of Pennsylvania including in Washington County.

## III.   FACTUAL BACKGROUND

### A.     Mortgages Loans Involve Two Instruments Under Pennsylvania Law.

25.     In Pennsylvania, a mortgage loan involves two legal instruments, a promissory note (or "note") and a mortgage. The note contains the terms of the borrower's promise to repay the loan,

and the mortgage operates, in part, as a lien on the real estate providing the lender security for repayment of the note. That security includes the right to foreclose upon and sell the mortgaged property in a sheriff's sale under certain circumstances.

26.     Promissory notes for mortgage loans are negotiable instruments under Pennsylvania's version of the Uniform Commercial Code, and they may be bought and sold in the so-called "secondary market" for mortgage loans. In some cases, mortgage loans are bought and sold for the purpose of being "securitized." Securitization is a complex process in which an investment bank or other sponsor purchases numerous mortgage loans and pools them into a trust or other special purpose vehicle, and then issues marketable securities backed by the mortgage loans in the trust. In a typical securitization, a mortgage loan may be sold multiple times as the promissory note passes through intermediaries between the originating lender and the MBS trust into which the mortgage loans are pooled.

27.     In 2004, the Pennsylvania Supreme Court clarified that, under Pennsylvania law, a mortgage is more than merely a lien on the property securing the note. For purposes of Pennsylvania's property recording laws, a mortgage is also conditional conveyance of title to the real estate securing the note. Mortgage assignments, therefore, are also deemed "conveyances" under Pennsylvania law. *Pines v. Farrell*, 577 Pa. 564, 848 A.2d 94 (2004).

**B.     Recordation of Mortgages and Mortgage Assignments Is Mandatory.**

28.     The recording of mortgages and mortgage assignments presently is governed by 21 P.S. § 351 (hereinafter "Section 351" or "§ 351"), which provides that, "All deeds, conveyances, contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth, upon being acknowledged by the parties executing the same or proved in the

manner provided by the laws of this Commonwealth, shall be recorded in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate." 21 P.S. §351.

29.     Although Section 351 was enacted in 1925 (as 1925 Pa. Laws 613), the statutory requirements for recording mortgage assignments have a longer history. Pennsylvania's first recording statute, the Act of May 28, 1715 ("1715 Act"), 1 Sm. L. 94, § 2, provided that "all bargains and sales, deeds and conveyances of lands, tenements, and hereditaments, *may be recorded* in the said office." (emphasis added). However, § 7 of the 1715 Act provided, "That no deed of mortgage, or defeasible deed in the nature of mortgage, hereafter to be made, shall be good or sufficient to convey or pass any freehold or inheritance, or to grant any estate therein for life or years, unless such deed be acknowledged or proved and recorded within six months after the date thereof, where such lands lie, as hereinbefore directed for other deeds."  Thus, under the 1715 Act, "there was no absolute necessity to record any deeds, mortgages excepted."  *Delancy v. McKeen*, 7 F. Cas. 374 (1806, Circuit Court D. Pennsylvania).

30.     The General Assembly supplemented the 1715 Act in the Act of March 18, 1775 ("1775 Act"), 1 Sm. L. 422, providing, "That all deeds and conveyances which from and after the publication hereof shall be made and executed within this province…shall be acknowledged by one of the grantors or bargainers…and *shall be recorded in the office for recording of deeds in the county where such lands or hereditaments are lying* and being within six months after the execution of such deeds or conveyances." (emphasis added). This provision was again supplemented in 1841 so that it applied retroactively to deeds granted prior to 1775. 21 P.S. § 441.

31.     In 1849, the General Assembly enacted 21 P.S. § 623, which provided for the first time that "assignments of mortgages and letters of attorneys authorizing the satisfaction of

mortgages…*may be recorded*…."  However, 21 P.S. § 623, was repealed in 1998, and no subsequent statute has expressed the recordation of mortgage assignments as optional.

32.     Since 1998, the recordation of mortgages and mortgage assignments have been governed by Section 351, because mortgages and mortgage assignments constitute "conveyances" within the meaning of Section 351, which provides that the recording of conveyances of interests in real property – including mortgage assignments – is mandatory.

33.     Title 21 P.S. § 444 requires all mortgage assignments to be acknowledged and recorded within 90 days.

34.     Pennsylvania law also requires that mortgage assignments be in writing. 21 P.S. § 623-1.

**C.     Transfer of the Note Operates as An Assignment of the Mortgage.**

35.     Under long-standing real property law, a promissory note and the mortgage that secures it are legally inseparable. The mortgage instrument recites that it exists as security for the note, and the note recites the attendant mortgage as securing the indebtedness. Accordingly, when a mortgage note is assigned, the corresponding mortgage follows as a matter of law, while an assignment of the note alone is a nullity. *Carpenter v. Longan*, 83 U.S. 271, 274 (1872).

36.     Accordingly, if a promissory note secured by a mortgage is transferred, then the resulting mortgage assignment – a "conveyance" for purposes of the recording statutes – must be documented in a form suitable for recording and then recorded in office of the Recorder of Deeds for the county in which the property is situated, within 90 days as required by 21 P.S. §§ 351 and 444.

**D.     Securitization.**

37.      Beginning in the 1990s, securitization of mortgage loans became more common. Mortgage lenders would originate as many residential mortgage loans as possible and then sell them

to various banks and financial institutions. Investment banks would then pool the mortgages into special purpose trusts and issue securities backed by the mortgage loans in the trusts.

38.     To securitize a mortgage loan, several assignments must be made: (a) the originating lender sells the mortgage loans (promissory notes and mortgages) to a sponsor, which typically is a special purpose entity affiliated with a bank or financial institution; (b) the sponsor initiates the securitization by transferring the mortgage loans to a depositor; and (c) the depositor then transfers the mortgage loans to the trustee of a special purpose investment trust into which the mortgage loans are pooled.

39.     The securitization process thus requires at least three mortgage assignments and often involves more than three such assignments as the mortgage loan moves from origination, through several intermediaries in the secondary market, and into an investment trust. Under Pennsylvania law, each such assignment must be documented in a recordable form and timely recorded in the office of the Recorder of Deeds for the county in which the property is situated.

40.     A key assumption underlying the mortgage backed securities that are the end-product of the securitization process is that the mortgage is integral to, and inseparable from, the ownership of the debt. All participants in the MBS market fully expect and intend that the mortgage collateral is inseparable from the promissory note, and that the mortgage provides recourse for the owner of the mortgage loan at every step of the securitization process if there is a default on the note. To this end, MBS offering materials and the related pooling and servicing agreements recite that both the mortgages and the notes are conveyed together into the MBS trust, which evidences the importance of the inseparability of the notes and the mortgages in the trusts.

41.     In practice, while the mortgage itself is recorded at the time of origination, the participants in the securitization process routinely fail to timely record subsequent assignments as

the promissory notes are sold and resold in the secondary market to a sponsor, then to a depositor, and ultimately conveyed to the trustee of the MBS trust. Many such promissory notes on properties in Washington County and throughout Pennsylvania have been sold and assigned on multiple occasions, but there is no recording of these subsequent conveyances in the public record.

42.     Several of the Bank Defendants serve or have served as a trustee of MBS trusts that contain mortgages for properties situated in Washington County, Pennsylvania, and in all other Pennsylvania counties. Upon information and belief, the Bank Defendants or their respective affiliated companies have also participated in securitizations in other roles, including by selling mortgages into securitizations, as aggregators of mortgages for securitization, and as sponsors of MBS offerings. Defendants have, however, routinely failed to timely record mortgage assignments when they bought or sold promissory notes as part of the securitization process.

43.     To the extent that Defendants record mortgage assignments at all in connection with the transfers of promissory notes, they usually do so only well after the 90-day deadline imposed by 21 P.S. § 444 in order to file a required satisfaction or to facilitate foreclosure proceedings in the event of a default. In such cases, the mortgage assignment is often recorded many years after the recording deadline has passed.

44.     Defendants' failure to timely record mortgage assignments, or to record them at all, creates gaps in the record of ownership of title on Pennsylvania properties. Gaps in title cloud ownership, increase questions about foreclosure procedures, and raise doubts about the accurate satisfaction of mortgages, all of which undermine the time-honored recording requirements in Pennsylvania and the purpose of the recording laws in assuring an accurate public record of ownership interests in land.

45. In addition to clouding title, Defendants' failures to record mortgage assignments have caused collateral difficulties for homeowners, who are unable to tell from public land records who owns their loan.

**E.     The MERS System.**

46. Since 1995, a common means that Defendants have used to avoid recording mortgage assignments in connection with mortgage loan transfers is known as the "MERS System."

47. The MERS System is a members-only, private electronic mortgage loan registry owned and operated by Defendant MERSCORP. MERSCORP administers MERS membership, maintains the MERS System electronic mortgage registry, and promulgates and enforces the MERS System rules of membership and policies.

48. Defendant MERS, a wholly owned subsidiary of MERSCORP, exists solely to be nominated as a mortgagee of record in the public land records on behalf of, and in the place of, the MERS members who originate the mortgage loans as well as their undisclosed successors and assigns.

49. The MERS System was conceived and described in a 1993 "white paper" created by the Mortgage Bankers Association of America ("MBA"), through MBA's Interagency Technology Task Force, titled "Whole Loan Book Entry Concept for the Mortgage Finance Industry" ("White Paper"). The White Paper was published at the MBA's 1993 Annual Convention and used to solicit comments from the real estate finance industry on the MERS concept.

50. The central purpose and intent behind the MERS concept was to enjoy all of the benefits of the land title recording system, while avoiding the administrative burden and expense of publicly recording mortgage assignments in each county and paying the associated recording fees. The mortgage industry considers recording laws to be an anachronism – "creatures of 17th-century real property law [that] do not coexist easily with high-volume, late 20th-century secondary

14

mortgage market transactions." Phyllis K. Slesinger, "The MERS Project," *Mortgage Banking* (June 1995).

51.     In 1997, MERS' former CEO said that "MERS is owned and operated by and for the mortgage industry" and stressed that its express purpose was to circumvent recording assignments and paying fees to recorders of deeds in connection with such recording. Today, MERSCORP markets the MERS System as providing these benefits, stating on its website that, "Any loan – where MERS is the mortgagee – registered on the MERS® System is inoculated against future assignments because MERS remains the mortgagee no matter how many times servicing is traded."

52.     Nonetheless, the MERS System could not exist were it not for the existence of, and the benefits conferred upon Defendants by, the counties' public recording systems. As acknowledge by the MERS Defendants' former President and CEO R.K. Arnold in a deposition, "the MERS system couldn't exist if the recording system didn't exist."

53.     Under the MERS System, the originating lender usually names MERS as the original mortgagee in the documents signed by the lender and borrower at closing. Lenders can also assign their mortgages to MERS after origination. Under MERS' suggested residential mortgage clause, the borrower must agree that:

> MERS is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument.

The original mortgage is then recorded in MERS' name in the county land records while the promissory note is bought and sold any number of times among MERS members without the preparation or timely recording of corresponding mortgage assignments in the appropriate county recorder of deeds office.

54.     MERSCORP maintains a computerized database for the exclusive use of MERS System members, purportedly to track transfers of ownership interests and servicing rights for mortgage loans throughout the United States. MERSCORP also offers a separate electronic registry called "MERS eRegistry," a computerized trading platform through which members can buy and sell mortgage loans in the secondary market.

55.     While the originating lender is listed on the original recorded MERS mortgage, the identities of the subsequent "successors and assigns" in the secondary market such as the Bank Defendants – for whom MERS is also acting as agent – are undisclosed and concealed from the public land records.

56.     Despite being the designated mortgagee of record for as many as half of the residential mortgages in the United States, MERS reportedly has no employees. Instead, MERS operates through the use of "signing officers" (formerly known as "certifying officers") – employees of the Bank Defendants and other MERS members who are appointed as "Vice Presidents" or "Assistant Secretaries" of MERS at the request of the MERS member for a small fee. Through these appointments, each of the Bank Defendants employs resident, on-staff MERS "officers" who are paid by and controlled by the MERS members who employ them, but who are nonetheless authorized and empowered to execute legally binding assignments and satisfactions of MERS mortgages on behalf of MERS.

57.     If a MERS member owns a MERS mortgage and wishes to foreclose on the mortgage, the member can direct its in-house employee/MERS signing officer to execute and record a mortgage assignment so that the MERS member in question can use the public recording system to prove its mortgage rights in the foreclosure proceedings. These assignments for foreclosure purposes

are often recorded years after the mortgage loan was acquired, and there might have been two, three, or more prior assignments that were never recorded.

58.     Defendants' avoidance of filing mortgage assignments, through the MERS System and otherwise, has resulted in the loss of millions of dollars in recording fees to Plaintiff and the Class. In the Commonwealth of Pennsylvania alone, Plaintiff estimates that over $100 million was lost in recording fees because interim mortgage assignments were not recorded.

## IV.     CLASS ACTION ALLEGATIONS

59.     Plaintiff brings this action on its own behalf and as a class action, pursuant to Rule 1702 of the Pennsylvania Rules of Civil Procedure, on behalf of all Pennsylvania Counties (the "Class").

60.     The Class is so numerous that joinder of all members is impracticable. There are 67 Pennsylvania Counties.

61.     There are questions of law or fact which are common to the Class, including:

a.      whether Section 351 imposes a mandatory obligation to record mortgage assignments;

b.      whether the transfer of a mortgage note effects an assignment of the mortgage that secures the note, and;

c.      whether transfers of mortgage notes that are not accompanied by the recording of a mortgage assignment violate Section 351.

62.     The claims of Plaintiff are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Each Plaintiff asserts the same type of injury, namely harm to each Class Member's land records and the resulting loss of recording fees, from the Defendants' course of conduct.

63.     Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained qualified counsel that is experienced in class action litigation, and who have adequate financial resources to prosecute this litigation on behalf of Plaintiff and the Class. Moreover, there are no conflicts of interest between Plaintiff and any of the Class members.

64.     A class action provides a fair and efficient method for adjudicating the claims of Plaintiff and the Class, for all of the following reasons:

a.     the common questions of law or fact predominate over any question affecting only individual Class members;

b.     the Class size of 67 members is manageable, the Class members are readily identifiable, and Plaintiff anticipates that no difficulties will be encountered in the management of the action as a Class action;

c.      the prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; and

d.     Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to, the Class and, therefore, preliminary and final injunctive relief on behalf of the Class as a whole is appropriate.

## CAUSES OF ACTION

## COUNT I - VIOLATIONS OF 21 P.S. § 351

65.     Plaintiff hereby realleges and incorporates the allegations contained in all paragraphs above as if fully set forth herein.

66.     Each of the Defendants failed to properly document and timely record mortgage assignments and to pay the associated recording fees in connection with its transfers of promissory notes secured by mortgages on real property in Pennsylvania, causing Plaintiff and the Class a loss of millions of dollars in recording fees, creating gaps in the public land records, and rendering the public recording system inaccurate and incomplete.

67.     To the extent that Defendants' violations of 21 P.S. § 351 were caused through their participation in the MERS System, or through the conduct of the MERS signing officers employed by Defendants, MERS and/or MERSCORP was acting as an agent for Defendants pursuant to an express written agreement.

68.     As a proximate result of the Defendants' negligent and willful violations of 21 P.S. § 351, Plaintiff and the Class were damaged in an amount to be ascertained at trial.

## COUNT II - QUIET TITLE

69.     Plaintiff hereby realleges and incorporates the allegations contained in all paragraphs above as if fully set forth herein.

70.     Plaintiff, as Recorder of Deeds for Washington County, has an interest in the recordation of mortgage assignments on properties located within Washington County and in collecting the fees due upon such recordation, including those assignments where the MERS System is used.

71.     Each Defendant has engaged in transfers of promissory notes secured by mortgages

on real property in Washington County and throughout Pennsylvania, including under the MERS System, but have not properly and timely documented and recorded these assignments with the county recorder, as required by law.

72.    Defendants have documents and other data in their possession or control reflecting the assignments of each such mortgage that should have been recorded, including data in the MERS System.

73.    Plaintiff seeks an order compelling Defendants to account for the missing mortgage assignments in which they were the transferor or transferee and record those assignments with the Recorders of Deeds in the counties where the properties are situated, and to create documents suitable for recordation if necessary to facilitate that recordation.

## COUNT III - UNJUST ENRICHMENT

74.    The Plaintiff hereby realleges and incorporates the allegations contained in all paragraphs above as if fully set forth herein.

75.    Based upon Defendants' wrongful conduct, Plaintiff and the Class seek to recover in equity monies held by Defendants that belong to Plaintiff and the Class.

76.    Plaintiff and the members of the Class each conferred benefits on the Defendants by maintaining the public recording system in Pennsylvania. Defendants enjoyed and appreciated those benefits by recording the initial mortgage, and then by continuing to transfer the mortgagees without recording subsequent assignments and paying the required recording fees. Defendants' retention of those benefits without payment will produce an inequitable result. These benefits amounted to millions of dollars in money due to Plaintiff and the other Class Members. Plaintiff, under Pennsylvania law, has the authority to collect these overdue fees.

77.     In addition, when Defendants circumvented the county recording system they were able to benefit from the appearance of holding good title on thousands of properties, which was essential to the formation and operation of the MBS trusts. Without recording of these assignments, Plaintiff and the Class are denied an accurate accounting of property transfers in Washington County and throughout Pennsylvania. Defendants' acceptance of these benefits and failure to compensate Plaintiff and the Class members is unconscionable.

78.     Prior to Defendants' actions, the recording indexes of the counties provided a transparent public record that promoted open and vibrant commercial activity by enabling potential mortgage purchasers to know with certainty whether they could obtain clear title to land. Recording the assignments will assist in clearing title to the relevant properties. The Plaintiff and the Class are entitled to all such monies based on the general principles of equity and good conscience.

79.     Plaintiff and the Class seek equitable remedies to prevent the unjust enrichment of Defendants by causing payment to Plaintiff and the Class of all mortgage assignment fees wrongfully avoided by the Defendants in addition to interest, attorneys' costs and fees, and, exemplary damages as allowed by law and equity.

**COUNT IV- DECLARATORY JUDGMENT AND PERMANENT INJUNCTION FOR DEFENDANTS' FAILURE TO RECORD MORTGAGE ASSIGNMENT IN VIOLATION OF 21 P.S. § 351**

80.     The Plaintiff hereby realleges and incorporates the allegations contained in all paragraphs above as if fully set forth herein.

81.     This is an action against Defendants for a declaratory judgment pursuant to the Declaratory Judgments Act, 42 Pa. C.S. § 7531, *et seq*. and for a permanent injunction.

82.     As a result of Defendants' actions, the Plaintiff and the Class are uncertain about the true owners of title to property because of unrecorded mortgage assignments.

83.     Plaintiff seeks clarification about the assignment of mortgages to restore order to the property records in recorders' offices throughout the Commonwealth.

84.     The Plaintiff and the Class have a bonafide, actual, imminent, present and practical need for a declaration that: (1) transfers of promissory notes secured by mortgages on real property in Pennsylvania mortgages operate to assign the related mortgage as a matter of law, and (2) the failure to prepare and timely record a mortgage assignment evincing the transfers of such promissory notes and the consequent assignment of the related mortgage is a violation of 21 P.S. §§ 351, 444 and 623-1.

85.     Defendants' inequitable actions have undermined, and continue to undermine, the accuracy and integrity of the Pennsylvania public land records that Plaintiff and the other Class Members are responsible for maintaining. An award of damages is inadequate to remedy Defendants' violations of law.

86.     The Plaintiff and the Class seek a declaratory judgment and a permanent injunction requiring Defendants to properly record in the public record, any and all assignments of mortgages where they were transferors or transferees and to pay the applicable recording fees.

## JURY DEMAND

87.     Plaintiff hereby demands, on behalf of herself and the Class, a trial by jury on all issues so triable in this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following on behalf of itself and the Class:

      a.     For certification of the Class;

      b.     For judgment against Defendants and in favor of Plaintiff and the Class on all causes of action asserted in this Complaint;

c.      Compensatory damages;

d.      Restitution and disgorgement of all monies due and owing to the Plaintiff and Class;

e.      A declaration and determination by the Court of the rights, duties, and remedies for the failure to record mortgage assignments and pay the accompanying fees;

f.      A judgment against Defendants quieting title on the properties where mortgage assignments were not properly recorded by Defendants;

g.      A mandatory injunction requiring Defendants to record all prior mortgage assignments that Defendants failed to record in county recorder offices throughout Pennsylvania and payment of the applicable recording fees;

h.      For costs of suit incurred herein;

i.      For pre-judgment interest to the extent allowed by law;

j.      For penalties as alleged in this Complaint;

k.      For reasonable and necessary attorneys' fees; and

l.      For such other and further relief as this Court may deem just and proper.

Dated:  June 22, 2016                    Respectfully submitted,


                                        */s/ D. Aaron Rihn*
                                        D. Aaron Rihn (Pa. ID. No.: 85752)
                                        Robert Peirce & Associates, P.C (Firm I.D. 839)
                                        707 Grant Street, Suite 2500
                                        Pittsburgh, PA 15219
                                        Phone: (412) 281-7229
                                        Email: arihn@peircelaw.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

COUNTY OF WASHINGTON,
PENNSYLVANIA, on its own behalf and on
behalf of all similarly situated Pennsylvania
Counties,

      Plaintiff,

  v.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC, et al.,

     Defendants.

CIVIL ACTION NO. 2:16-cv-672

JUDGE JOY FLOWERS CONTI

JURY TRIAL DEMANDED

## CERTIFICATE OF SERVICE

  I hereby certify that the foregoing document was electronically file on this 22nd day of June

2016 with the Clerk of Court for the Western District of Pennsylvania, and a copy was served on all

counsel of record via the Court's electronic filing system.

            */s/ D. Aaron Rihn*
            D. AARON RIHN, ESQUIRE